**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| IN RE SINCLAIR BROADCAST GROUP, INC. SECURITIES LITIGATION | C.A. No. 1:18-cv-02445-CCB |

**MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S
MOTION FOR RECONSIDERATION OR, IN THE ALTERNATIVE, TO
CERTIFY DISMISSAL AS FINAL AND APPEALABLE**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES.................................................................................................II

PRELIMINARY STATEMENT .......................................................................................1

ARGUMENT .................................................................................................................2

I.      THE COURT SHOULD DENY THE MOTION FOR RECONSIDERATION.................2

        A.      Plaintiff Improperly Seeks to Re-Litigate Arguments the Court Rejected.............3

        B.      Plaintiff Fails to Identify a "Clear Error Causing Manifest Injustice" in the
                Opinion ......................................................................................................5

                1.      The Court's Scienter Decision Regarding the May through October
                        2017 Statements Was Not a "Clear Error" ...................................5

                2.      The Court's Treatment of the HDO Was Not a "Clear Error" ..................9

                3.      The Court's Group Pleading Analysis Was Consistent with
                        Applicable Fourth Circuit Precedent .........................................11

                4.      The Court Was Not Required to Find Additional Statements
                        Actionable ...........................................................................12

II.     RULE 54(B) CERTIFICATION IS NOT WARRANTED .............................................15

        A.      The Order Is Not a Final Judgment........................................................17

        B.      Entry of Judgment Would Be Premature ........................................................19

                1.      Plaintiff's Argument that the Dismissed Statements Are Distinct
                        and Separable Fails ..............................................................19

                2.      Miscellaneous Factors Do Not Support Certification...............................22

CONCLUSION...............................................................................................................23

<u>T</u>ABLE OF <u>A</u>UTHORITIES

**Page(s)**

**Cases**

*Am. Home Assur. Co. v. KBE Bldg. Corp.*,
    2015 WL 1209940 (D. Md. Mar. 16, 2015)............................................................5

*Ash v. PowerSecure Int'l, Inc.*,
    2015 WL 5444741 (E.D.N.C. Sept. 15, 2015)........................................................13

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007)..................................................................................................8

*Blanch v. Chubb & Sons, Inc.*,
    2017 WL 2361088 (D. Md. May 31, 2017)..............................................................5

*Braswell Shipyards, Inc. v. Beazer E., Inc.*,
    2 F.3d 1331 (4th Cir. 1993) .................................................................2, 16, 17, 20

*Bright v. Tishman Constr. Corp.*,
    1998 WL 63403 (S.D.N.Y. Feb. 17, 1998).............................................................22

*Carlson v. Bos. Sci. Corp.*,
    856 F.3d 320 (4th Cir. 2017) ...................................................................................3

*CDS Family Tr. v. Martin*,
    2019 WL 3306011 (D. Md. July 23, 2019)...............................................................4

*City of Cape Coral Mun. Firefighters' Ret. Plan v. Emergent Biosolutions, Inc.,
    HQ*,
    322 F. Supp. 3d 676 (D. Md. 2018) .......................................................................23

*Curtiss-Wright Corp. v. General Electric Co.*,
    446 U.S. 1 (1980)..............................................................................................16, 22

*Dave & Buster's, Inc. v. White Flint Mall, LLP*,
    2014 WL 11460866 (D. Md. Apr. 28, 2014) ..........................................................18

*DeCicco v. United Rentals, Inc.*,
    602 F. Supp. 2d 325 (D. Conn. 2009), *aff'd sub nom. First N.Y. Sec. LLC v.
    United Rentals Inc.*, 391 F. App'x 71 (2d Cir. 2010) .............................................9

*Dickinson v. Crabs on Deck, LLC*,
    2019 WL 1934485 (D. Md. Apr. 30, 2019) ............................................................16

*Elec. Workers Pension Tr. Fund of IBEW Local Union No. 58 v. CommScope, Inc.*,
2013 WL 4014978 (W.D.N.C. Aug. 6, 2013)..........................................................................14

*Evans v. Trinity Indus., Inc.*,
148 F. Supp. 3d 542 (E.D. Va. 2015) ......................................................................................3

*Heckman v. Ryder Truck Rental, Inc.*,
2014 WL 3405003 (D. Md. July 9, 2014).........................................................................16, 20

*Henson v. Santander Consumer USA, Inc.*,
2015 WL 433475 (D. Md. Feb. 2, 2015) ...................................................................4, 16, 17

*Hering v. Walgreen Boots Alliance, Inc.*,
341 F. Supp. 3d 412 (M.D. Pa. 2018).....................................................................................23

*Huggins v. N.C. Dep't of Admin.*,
2011 WL 5439091 (E.D.N.C. Nov. 9, 2011)...........................................................................21

*Jordan v. Pugh*,
425 F.3d 820 (10th Cir. 2005) ..............................................................................................17

*Lloyd Noland Found., Inc. v. Tenet Health Care Corp.*,
483 F.3d 773 (11th Cir. 2007) ..............................................................................................17

*Lynn v. Monarch Recovery Mgmt., Inc.*,
953 F. Supp. 2d 612 (D. Md. 2013) ........................................................................................5

*Marks v. Licul*,
2013 WL 6014026 (D. Md. Nov. 7, 2013) ......................................................................17, 22

*Mills v. Polar Molecular Corp.*,
12 F.3d 1170 (2d Cir. 1993)...............................................................................................7, 9

*Mortimer v. Diplomat Pharmacy Inc.*,
2019 WL 4934602 (N.D. Ill. Oct. 7, 2019)............................................................................23

*In re Mun. Mortg. & Equity, LLC, Sec. & Deriv. Litig.*,
No. 1:08-md-01961-MJD (D. Md. Nov. 14, 2012) ....................................................16, 20, 21

*Nat'l Credit Union Admin. Bd. v. Morgan Stanley & Co.*,
2015 WL 4463645 (D. Kan. July 21, 2015) ............................................................19, 20, 21

*Neuberger Berman Real Estate Income Fund, Inc. v. Lola Brown Tr. No. 1B*,
225 F.R.D. 171 (D. Md. 2004)................................................................................................20

*Phillips v. Triad Guar. Inc.*,
2015 WL 1457980 (M.D.N.C. Mar. 30, 2015) .......................................................................13

*Powers v. British Vita, P.L.C.*,
   57 F.3d 176 (2d Cir. 1995) ...................................................................................... 7, 9

*Shalom v. Payless Shoesource Worldwide, Inc.*,
   921 F. Supp. 2d 470 (D. Md. 2013) ............................................................................ 4

*In re Sinclair Broad. Grp., Inc. Sec. Litig.*,
   2020 WL 571724 (D. Md. Feb. 4, 2020) ............................................................ *passim*

*Sinclair Broad. Grp., Inc. v. Colour Basis, LLC*,
   2017 WL 818713 (D. Md. Mar. 2, 2017) ........................................................... *passim*

*Singer v. Reali*,
   883 F.3d 425 (4th Cir. 2018) ............................................................................ *passim*

*Slayton v. Am. Express Co.*,
   604 F.3d 758 (2d Cir. 2010) .................................................................................... 14

*Smith v. BNSF Ry. Co.*,
   2019 WL 5104461 (D. Colo. Oct. 11, 2019) .............................................................. 6

*Taylor v. Edwards*,
   2019 WL 7037957 (D. Md. Dec. 20, 2019) ............................................................ 1, 2

*Teachers' Ret. Sys. of La. v. Hunter*,
   477 F.3d 162 (4th Cir. 2007) ................................................................................... 12

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
   551 U.S. 308 (2007) .................................................................................................. 6

*TransPacific Tire & Wheel, Inc. v. Orteck Int'l, Inc.*,
   2010 WL 2774445 (D. Md. July 13, 2010) ............................................................... 22

*In re Under Armour Sec. Litig.*,
   342 F. Supp. 3d 658 (D. Md. 2018) ......................................................................... 11

*U.S. Tobacco Coop. Inc. v. Big S. Wholesale of Va., LLC*,
   899 F.3d 236 (4th Cir. 2018) ............................................................................ *passim*

*United States v. Byrd*,
   2019 WL 5423592 (D. Md. Oct. 23, 2019) ................................................................ 2

*United States v. Laakmann*,
   2015 WL 13273107 (S.D. Fla. Feb. 5, 2015) ............................................................. 6

*In re Wireless Tel. Radio Frequency Emissions Prods. Liab. Litig. (Nokia, Inc.)*,
   219 F. Supp. 2d 703 (D. Md. 2002) .................................................................... 16, 17

*Wootten v. Commonwealth of Va.*,
   168 F. Supp. 3d 890 (W.D. Va. 2016) ........................................................................3

**Statutes**

15 U.S.C. § 78u-4(b)(2) ...........................................................................................7

15 U.S.C. § 78u-5(c)(1)(A)(i) .................................................................................14

15 U.S.C. § 78u-5(c)(1)(B) .....................................................................................13

**Other Authorities**

47 C.F.R. § 73.3555 ...............................................................................................13

Fed. R. Civ. P. 54(b) .................................................................................... *passim*

Fed. R. Civ. P. 59(e) ................................................................................................2

## PRELIMINARY STATEMENT

On February 5, 2020, this Court issued a 40-page ruling, granting in part and denying in part Defendants' motion to dismiss the Complaint, thereby holding that 66 of the 68 statements challenged in the Complaint were inactionable.  *See In re Sinclair Broad. Grp., Inc. Sec. Litig.*, 2020 WL 571724, at *1, 21 (D. Md. Feb. 4, 2020) (the "Opinion"); Order, ECF No. 59 (the "Order").[1]  Plaintiff filed the present motion (the "Motion" or "Mot.") seeking reconsideration of the Court's decision or, in the alternative, permission to lodge an immediate appeal.  Both requests are entirely without merit and should be denied.

First, the motion for reconsideration should be denied because Plaintiff falls well short of demonstrating (as it must) "clear error causing manifest injustice."  *Taylor v. Edwards*, 2019 WL 7037957, at *1 (D. Md. Dec. 20, 2019).  Indeed, Plaintiff does nothing more than recycle the arguments set forth in its opposition to Defendants' motion to dismiss.  It is well-settled that Rule 54(b) motions may not be used to re-litigate issues that previously were briefed and rejected by the Court.  The Fourth Circuit has instructed that, for something to qualify as "clear error" warranting reconsideration, it "must strike [the court] as wrong with the force of a five-week-old, unrefrigerated dead fish."  *U.S. Tobacco Coop. Inc. v. Big S. Wholesale of Va., LLC*, 899 F.3d 236, 258 (4th Cir. 2018).  Plaintiff's nitpicking of the Opinion comes nowhere close to meeting that exacting standard.

---

[1] References to "ECF No. __" are to documents filed in the electronic docket for this action. "Compl." refers to Plaintiff's Amended Class Action Consolidated Complaint (ECF No. 45). "MTD" refers to Defendants' Memorandum of Law In Support of Motion to Dismiss Amended Class Action Consolidated Complaint (ECF No. 49-1).  "Opposition" or "MTD Opp." refers to Plaintiff's Memorandum of Law In Opposition to Defendants' Motion to Dismiss the Amended Class Action Complaint (ECF No. 54).  "MTD Reply" refers to Defendants' Reply Memorandum of Law In Support of Motion to Dismiss Amended Class Action Consolidated Complaint (ECF No. 55).  Unless otherwise noted, emphasis is added and citations are omitted.

Second, Plaintiff fails to satisfy either of the elements that would permit (but not require) the Court to certify the Order for appeal.  This is not "the unusual case in which the costs and risks of multiplying the number of proceedings and overcrowding the appellate docket are outbalanced by pressing needs of the litigants for an early and separate judgment as to some claims or parties." *Braswell Shipyards, Inc. v. Beazer E., Inc.*, 2 F.3d 1331, 1335 (4th Cir. 1993).  The Court did not dismiss either of Plaintiff's causes of action or any Defendants.  And given that the topic of the statements still at issue overlaps with the topic of some of the statements that the Court properly held were inactionable, certification of an interlocutory appeal is inadvisable because it "could result in the Fourth Circuit being asked to consider the [same] facts more than once." *Sinclair Broad. Grp., Inc. v. Colour Basis, LLC*, 2017 WL 818713, at *4 (D. Md. Mar. 2, 2017) (Blake, J.).

<u>**ARGUMENT**</u>

## I.   **THE COURT SHOULD DENY THE MOTION FOR RECONSIDERATION**

Under Federal Rule of Civil Procedure 54(b), a "district court retains the power to reconsider and modify its interlocutory judgments . . . at any time prior to final judgment when such is warranted." *U.S. Tobacco*, 899 F.3d at 256.  However, "the discretion afforded by Rule 54(b) is not limitless" and "is subject to the caveat that where litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again." *Id.* at 256-57.  Accordingly, an interlocutory order "may only be amended to account for '(1) a subsequent trial producing substantially different evidence; (2) a change in applicable law; or (3) clear error causing manifest injustice.'" *Taylor*, 2019 WL 7037957, at *1; *see also United States v. Byrd*, 2019 WL 5423592, at *1 (D. Md. Oct. 23, 2019) (same).[2]

---

[2] Thus, the standard for reconsideration under Rule 54(b) "closely resembles the standard applicable to motions to reconsider final orders pursuant to Rule 59(e)" and only "departs" from

Plaintiff concedes that the first two parts of that test are inapplicable.  *See* Mot. 5-6.

For the reasons shown below, Plaintiff fails to satisfy its burden to show any "clear error causing

manifest injustice," and thus its Motion should be denied.

### A.      Plaintiff Improperly Seeks to Re-Litigate Arguments the Court Rejected

As an initial matter, the overwhelming majority of Plaintiff's challenges to the Opinion

do not identify any supposed "error" by the Court (much less a "clear" one "causing manifest

injustice"), but rather improperly restate arguments that were raised in the Opposition and

soundly rejected by the Court.  Motions for reconsideration, however, are not an opportunity for

aggrieved parties to "put a finer point on their old arguments and dicker about matters decided

adversely to them."  *Evans v. Trinity Indus., Inc.*, 148 F. Supp. 3d 542, 546 (E.D. Va. 2015).  As

this Court has expressly ruled, motions for reconsideration "should not be used to relitigate old

matters, or to raise arguments or present evidence that could have been raised prior to the entry

of judgment."  *Colour Basis*, 2017 WL 818713, at *1; *see also Wootten v. Commonwealth of Va.*,

168 F. Supp. 3d 890, 893 (W.D. Va. 2016) ("reconsideration is not meant to re-litigate issues

already decided, provide a party the chance to craft new or improved legal positions, highlight

previously-available facts, or otherwise award a proverbial 'second bite at the apple' to a

dissatisfied litigant").

The following arguments in the Motion, among others, simply restate arguments that

were raised in Plaintiff's Opposition and were rejected by the Court:

- Plaintiff's argument that Sinclair's statements between May and October 2017 about its
obligations to divest stations under the Merger Agreement were supposedly actionable
because the Company's subsequent negotiations with DOJ showed that Defendants

---

the Rule 59(e) standard "by accounting for potentially different evidence discovered during
litigation as opposed to the discovery of new evidence not available at trial."  *Carlson v. Bos.
Sci. Corp.*, 856 F.3d 320, 325 (4th Cir. 2017).  Here, there has been no discovery, and thus this
"departure" from Rule 59(e) does not apply.

harbored a "secret intent" not to perform under that agreement or because the Company was supposedly required to update investors regarding those negotiations.  *Compare* Mot. 6-7 *with* MTD Opp. 22-23; *compare* Mot. 10-11 & n.4 *with* MTD Opp. 22-23.  The Motion not only cites the same cases cited in the Opposition for the same propositions but also cites the Opposition itself.  Mot. 6, 11.

- Plaintiff's argument that, in light of the HDO and the decision in *Singer v. Reali*, 883 F.3d 425 (4th Cir. 2018), the Court had no choice but to hold that Plaintiff adequately pled actionable misstatements in Sinclair's February and April 2018 divestiture proposals.  *Compare* Mot. 12-15 *with* MTD Opp. 29 & n.14 *and* MTD Opp. 42.

- Plaintiff's argument that, under *Singer*, Plaintiff was not required to plead each Individual Defendant's conduct with particularity because the alleged fraud was supposedly "directed" by those individuals.  *Compare* Mot. 21 *with* MTD Opp. 37-38 & 43-44.

- Plaintiff's argument that allegations about Mr. Ripley's participation in earnings calls and correspondence with Tribune and about Mr. Smith's relationships with Cunningham are sufficient to establish the scienter of those defendants.  *Compare* Mot. 21 *with* MTD Opp. 44-45.

- Plaintiff's argument that statements by confidential witnesses ("CWs") supported the inference that Sinclair violated FCC rules in connection with the Merger and misled investors regarding its divestitures' compliance with FCC rules.  *Compare* Mot. 16-18 *with* MTD Opp. 42-43.

- Plaintiff's argument that Sinclair's forward-looking projections about the anticipated timing of the Merger closing were actionable because Defendants supposedly knew that the Merger could not receive approval.  *Compare* Mot. 19-20 *with* MTD Opp. 26.

- Plaintiff's argument that increases in Sinclair's stock prices following the February and April 2018 divestiture proposals indicated that investors were misled by the alleged misstatements in those documents.  *Compare* Mot. 17-18 *with* MTD Opp. 31.

That Plaintiff disagrees with the Opinion and Order is legally irrelevant for purposes of a Rule 54(b) motion.  *See Colour Basis*, 2017 WL 818713, at *1; *CDS Family Tr. v. Martin*, 2019 WL 3306011, at *1 (D. Md. July 23, 2019).  As several cases from this Court <u>cited in Plaintiff's own Motion</u> make clear, "[b]y merely restating an argument already offered, and rejected by th[e] Court, [movant] fails to establish a clear error of law such that reconsideration is appropriate." *Henson v. Santander Consumer USA, Inc.*, 2015 WL 433475, at *4 (D. Md. Feb. 2, 2015) (Mot. 22, 23, 24, 26) (denying motion for reconsideration that repeated arguments already rejected by the Court); *Shalom v. Payless Shoesource Worldwide, Inc.*, 921 F. Supp. 2d

470, 480-81 (D. Md. 2013) (Mot. 5) (similar); *Lynn v. Monarch Recovery Mgmt., Inc.*, 953 F.

Supp. 2d 612, 620-21 (D. Md. 2013) (Mot. 5-6) (similar).  Accordingly, reconsideration of these

arguments would be improper.  *See Blanch v. Chubb & Sons, Inc.*, 2017 WL 2361088, at *3 (D.

Md. May 31, 2017) (Blake, J.) (denying reconsideration motion that was "nothing more than a

request that the district court change its mind, which [did] not entitle [movant] to relief"); *Am.*

*Home Assur. Co. v. KBE Bldg. Corp.*, 2015 WL 1209940, at *2 (D. Md. Mar. 16, 2015) (Blake,

J.) ("[Plaintiff] merely rehearses arguments that it previously asserted and this court previously

rejected. Retreading old ground cannot justify reconsideration.").

> **B.      Plaintiff Fails to Identify a "Clear Error**
> **Causing Manifest Injustice" in the Opinion**

The Fourth Circuit imposes a very high bar upon parties seeking reconsideration based on

a claim that an interlocutory order purportedly contains "clear error."  As the Fourth Circuit

explained when reversing and vacating an order granting reconsideration on this theory, "[a]

prior decision does not qualify for [reconsideration based on a clear error] by being just maybe or

probably wrong; it must strike us as wrong with the force of a five-week-old, unrefrigerated dead

fish." *U.S. Tobacco*, 899 F.3d at 258.  In other words, "[i]t must be <u>dead wrong</u>." *Id.*  None of

the supposed clear errors Plaintiff identifies come remotely close to meeting this standard.

> 1.      The Court's Scienter Decision Regarding the May
> <u>through October 2017 Statements Was Not a "Clear Error"</u>

Plaintiff offers two arguments challenging the Court's rulings related to scienter.

First, Plaintiff argues that the Court's dismissal of claims predicated on alleged misstatements

between May 8 and August 22, 2017, concerning Sinclair's obligations to divest stations under

the Merger Agreement, was erroneous because the Court somehow misapplied the standard for

pleading scienter.  Mot. 6-10.  Second, Plaintiff insists that the Opinion wrongfully dismissed

these statements, as well as similar statements made on September 6 and October 5, 2017,

because the allegations in the Complaint regarding Sinclair's subsequent negotiations with DOJ adequately alleged that Defendants harbored a "secret intent" not to perform under the Merger Agreement.  Mot. 6-7, 10-11.  Neither of these two arguments has any merit.

First, Plaintiff has tried to manufacture confusion regarding the applicable standard for scienter by focusing on a single sentence in the 40-page Opinion, in which the Court stated that the Complaint's "explanation of Sinclair's actions is no more plausible than Sinclair's explanation."  Mot. 6 (citing *Sinclair*, 2020 WL 571724, at *7).  Plaintiff protests that this single sentence suggests that the Court believed that the inferences urged by Plaintiff were equally likely as the opposing inferences and therefore mandated a finding that scienter was adequately alleged because, under *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007), the "tie . . . goes to the Plaintiff."  Mot. 8.

However, this argument ignores the Court's detailed analysis supporting its conclusion that the Complaint's allegations failed outright to give rise to any "strong inference" of scienter altogether.  *See Sinclair*, 2020 WL 571724, at *6-7.  Indeed, the Court dedicated an entire section of the Opinion to accurately articulating the well-understood standards for pleading a violation of Section 10(b), including scienter.  *See id.* at *3-5.  Plaintiff's "cherry picking" of a single sentence from the Opinion does not invalidate the Court's legally sound, amply supported conclusion that the May-August 2017 statements were inactionable.  *Smith v. BNSF Ry. Co.*, 2019 WL 5104461, at *2 (D. Colo. Oct. 11, 2019) (denying reconsideration where plaintiff "cherry picked . . . and read in isolation" a single sentence from the order where "[t]he court spent many pages of the order outlining the correct legal standard"); *see also United States v. Laakmann*, 2015 WL 13273107, at *3 (S.D. Fla. Feb. 5, 2015) (similar), *report and recommendation adopted*, 2015 WL 13260300 (S.D. Fla. Mar. 4, 2015).

Here, with respect to the challenged May-August 2017 statements, the Court specifically concluded that they "either describe Sinclair's obligations under the Merger Agreement or affirm Sinclair's commitment to complying with those obligations," and therefore they could "not constitute fraud unless, when the promise was made, the defendant secretly intended not to perform or knew that he could not perform." *See id.* at *6-7 (citing *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1176 (2d Cir. 1993)).[3]   The Court went on to find that Plaintiff's allegations regarding Sinclair's and Mr. Ripley's conduct between May and August 2017 were "broad" and "conclusory," and, therefore, were not "sufficient to show [] that [they] 'secretly intended' not to make station divestitures at the time those statements were made." *Id.* at *7.

The Court then carefully reviewed the allegations regarding Sinclair's later discussions with Assistant Attorney General Makan Delrahim after his appointment on September 27, 2017, as well as the Company's subsequent negotiations with DOJ, concerning the divestitures that might be required for approval of the Merger. *Id.*   The Court concluded that it was "not persuaded that Sinclair's subsequent actions give rise to a 'strong inference' that statements in May-August 2017 belied a secret intention not to comply with Sinclair's divestiture obligations under the Merger Agreement." *Id.*

The Court did not need to go any further to properly hold that Plaintiff's allegations regarding the May-August 2017 statements did not meet the applicable pleading standards. *See* 15 U.S.C. § 78u-4(b)(2) (requiring plaintiffs to "state with particularity facts giving rise to a strong inference of scienter"); *Mills*, 12 F.3d at 1176 (non-performance months after contract signed "d[id] not bear on [defendant's] intent").   The Court's analysis was not premised on the

---

[3] Plaintiff does not challenge the Court's application of the *Mills* standard.   Nor could it, as this same standard is applied in the cases cited by Plaintiff. *See, e.g.*, *Powers v. British Vita, P.L.C.*, 57 F.3d 176, 185 (2d Cir. 1995) (Mot. 6-7).

additional observation that Plaintiff's allegations, insofar as they were "no more plausible" than Sinclair's statements during that period, failed to even meet the lower plausibility pleading standard under *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (let alone the governing *Tellabs* standard requiring a cogent and compelling inference of scienter).  *See Sinclair*, 2020 WL 571724, at *7.

Ultimately, the *Twombly* sentence plainly was not essential to the Court's holding (and thus could not have rendered the decision "dead wrong").  In fact, in light of the Court's extensive analysis of Plaintiff's deficient allegations, the dismissal of Plaintiff's claims premised on the May-August 2017 statements would stand on its own even if that sentence was removed altogether from the Opinion.  That is further confirmed by the Court's rejection of identical scienter allegations in connection with the challenged statements in Sinclair's September 6, 2017 prospectus.  *See id*.  Analyzing those statements under the *Mills* standard, the Court held that Plaintiff's scienter allegations fell short, without the need to assess whether they were "more plausible" than Sinclair's explanations.  *Id.* ("Sinclair's refusal of an alleged offer in late September 2017, or subsequent rejections of 'clear paths to regulatory approval,' does not give rise to a strong inference that when the agreement was made—or even when the Prospectus was filed—Sinclair did not intend to comply with its obligations.").  Put simply, Plaintiff's quibbling over a single sentence in the Opinion does not come close to qualifying as a "clear error causing manifest injustice."  *U.S. Tobacco*, 899 F.3d at 258.

Second, Plaintiff's alternative argument—that the Complaint adequately alleged that Defendants harbored a secret intention not to perform under the Merger Agreement at the time of the alleged misstatements between May and October 2017—fares no better.  As noted above (*supra* Sec. I.A.), the Court should not consider this argument because it already was raised and

rejected.  As the Court correctly concluded (*see* 2020 WL 571724, at *6-7), Sinclair's then

ongoing negotiations with DOJ, which the Complaint concedes continued into at least December

2017 (Compl. ¶ 38), are fatal to Plaintiff's claim that Sinclair breached the Merger Agreement

"so maliciously and so soon after" the challenged statements that a secret intent not to perform

was "evident."  *Powers*, 57 F.3d at 185; *Mills*, 12 F.3d at 1176; MTD Reply 7-10.[4]

### 2.   The Court's Treatment of the HDO Was Not a "Clear Error"

Plaintiff next challenges the Court's finding that the Complaint failed to plead either

falsity or scienter in connection with the February and April 2018 divestiture proposals.  Mot.

12-15.  According to Plaintiff, in reaching this decision, the Court improperly "discounted" the

HDO because it was not a final adjudication by the FCC, "ignor[ing] and contraven[ing]

controlling Fourth Circuit law, and specifically the recent case of *Singer*."  Mot. 12.

Plaintiff is improperly seeking to re-litigate arguments that were presented to, and

rejected by, the Court.  *See supra* Sec. I.A.  Plaintiff cites no rule of law set down by the Fourth

Circuit in *Singer* (or any other case) that the Court contravened.  Rather, Plaintiff spends pages

of its brief discussing the facts of *Singer* and trying to analogize them to the facts here.  Mot. 12-

15.  The Court did not find that analogy persuasive before, and Plaintiff offers no reason why the

analysis now should be any different.

---

[4] Plaintiff's argument that the Court erroneously rejected the claim that Sinclair failed to update
investors regarding its supposed change in strategy during negotiations with DOJ (Mot. 10-11)
fails because it is repeated virtually verbatim from the Opposition and was rejected by the Court.
*See supra* Sec. I.A.  It also fails because it is undermined by the allegations in the Tribune
Complaint, which make clear that Sinclair ultimately reached an agreement with DOJ on the
divestitures required for approval.  MTD Reply 9-10; *see also DeCicco v. United Rentals, Inc.*,
602 F. Supp. 2d 325, 345-46 (D. Conn. 2009) ("[A] party's change in attitude or position with
respect to a transaction triggers a duty to disclose only when that change is sufficiently
significant as to render prior or subsequent public disclosures materially misleading."), *aff'd sub
nom. First N.Y. Sec. LLC v. United Rentals Inc.*, 391 F. App'x 71 (2d Cir. 2010).

Moreover, Plaintiff's argument is based on a fundamental misapprehension, or even misrepresentation, of the Opinion.  The Court did not, as Plaintiff now claims (Mot. 2, 12, 13, 15), "discount" or otherwise treat the HDO as "meaningless" or "not probative" because of its lack of finality.  Rather, the Court pointed out (correctly) that Plaintiff's repeated mischaracterizations of the HDO as a "determination" were not accurate in light of the HDO's own language, which made clear that no determination had been made.  *See Sinclair*, 2020 WL 571724, at *9 n.15.  And, in determining whether Plaintiff adequately pled falsity and scienter, the Court plainly took into account the HDO and the facts alleged therein (about, for example, the relationships between Cunningham, Sinclair, and Mr. Smith).  *Id.* at *9 n.15, *17 n.28.  It simply did not agree with Plaintiff that the HDO and the facts alleged therein were sufficient to support Plaintiff's claims that Defendants knowingly misled investors regarding the compliance of the proposed divestitures with FCC rules.

The Court's analysis of the HDO was fully consistent with the Fourth Circuit's analysis in the *Singer* case, where the Fourth Circuit considered the factual allegations from a judicially noticed complaint in a separate *qui tam* action even though the claims in that complaint had not been fully adjudicated.  *See* 883 F.3d at 437.  There, the Fourth Circuit made clear that unadjudicated claims are not *per se* irrelevant, but it did not articulate a rule requiring courts to accept as true any and all unadjudicated claims.  *See id.* at 444.  The differing outcomes here and in *Singer* flow, not from application of different legal principles, but rather from differences in the facts and circumstances of the two cases: whereas the *qui tam* complaint in *Singer* set forth factual allegations expressly describing how the alleged misconduct was illegal (thus contradicting the defendants' statements to the contrary) (*see id.*), here, the HDO expressly left open the question—for the ALJ to decide once additional facts were adduced—whether

Sinclair's divestiture proposals complied with applicable rules.  HDO ¶ 3 (ECF No. 49-33); *see Sinclair*, 2020 WL 571724, at *9 n.15.  As the HDO made clear, a "<u>better understanding</u>" of the facts was "<u>needed</u>" before any determination could be made.  HDO ¶¶ 21, 26.  There was no comparable language in the *qui tam* complaint in *Singer*.  In light of the Court's careful and reasoned analysis of the HDO, Plaintiff's claims of a "clear error" fall flat.

>   3.   The Court's Group Pleading Analysis Was
>        <u>Consistent with Applicable Fourth Circuit Precedent</u>

Plaintiff's invocation of *Singer* to challenge the Court's well-reasoned rejection of the Complaint's group pled allegations of scienter (Mot. 20-21) likewise is meritless.  While this argument is improper for the reasons set forth above (*see supra* Sec. I.A.), it also fails because there was no error.  In *Singer*, the defendants failed to disclose that the company was directing physicians to incorrectly code medical procedures in order to illegally gain additional revenue from insurance reimbursements.  *See* 883 F.3d at 443-44.  The Fourth Circuit found that the scienter of the company's executives was adequately alleged because the conduct at issue was "<u>clearly</u> illegal" and, therefore, "so obvious that the [senior officers of the company] must have been aware of it."  *Id.*  By contrast, the FCC rules at issue here are more nuanced.  *See* MTD 24; HDO ¶ 17 n.41 (acknowledging Sinclair's relationships with Cunningham "would not, standing alone, give rise to a substantial and material question as to the issues of real party in interest").  Therefore, the conclusory allegation that Sinclair's "most senior executives" carried out the alleged fraud—unsupported by any particularized facts describing the executives' roles in the alleged scheme—is insufficient to plead the required strong inference of scienter.  *See In re Under Armour Sec. Litig.*, 342 F. Supp. 3d 658, 693-94 (D. Md. 2018) (rejecting group pled allegations of fraud by top executives).

Accordingly, the Court's rejection of group pleading in the Complaint was entirely

consistent with Fourth Circuit authority.  *See Teachers' Ret. Sys. of La. v. Hunter*, 477 F.3d 162, 184 (4th Cir. 2007) ("a plaintiff must allege facts that support a 'strong inference' that <u>each</u> defendant acted with at least recklessness in making the false statement").

               4.      <u>The Court Was Not Required to Find Additional Statements Actionable</u>

Plaintiff's final argument in support of reconsideration is that the Court must revisit its dismissal of the claims premised on several statements in light of its decision that claims arising from the two Sinclair statements in July 2018 that "Cunningham is operated completely separately from Sinclair" and that "Sinclair does not control or hold any attributable interest in Cunningham" were actionable.  Mot. 15-16.  Specifically, Plaintiff claims that the decision not to dismiss claims based on those two statements contradicts the Court's decision to dismiss claims predicated on (a) Sinclair's legal opinions regarding the proposed divestitures' compliance with FCC rules in the February and April 2018 FCC submissions; (b) Mr. Ripley's February 2018 opinion statement that regulatory approval of the Merger was "close"; (c) Sinclair's forward-looking projections regarding the anticipated closing date for the Merger; and (d) Sinclair's description of Cunningham President and CEO Michael Anderson as an "unrelated party."  Mot 16-20.  This is yet another improper attempt to re-litigate issues already presented to and rejected by the Court, and it fails for the reasons previously discussed.  *See supra* Sec. I.A.

But even if these arguments were not already considered and rejected (which they were), there plainly is no internal conflict or other inconsistency in the Court's determination and certainly no "clear error causing manifest injustice."  *U.S. Tobacco*, 899 F.3d at 257.

<u>First</u>, the Court's decision to sustain the two July 2018 statements was not, as Plaintiff now claims (Mot. 16-17, 19), inconsistent with its decision to dismiss Sinclair's opinion statements regarding the divestitures' compliance with FCC rules or the regulatory approval process for the Merger.  In the Opinion, the Court carefully distinguished between opinion

statements regarding the Merger's compliance with FCC rules, on the one hand, and statements suggesting that Cunningham was operated entirely independently of Sinclair, on the other hand. *See, e.g.*, 2020 WL 571724, at *18.  While the Court credited the CWs' statements regarding the latter, relying on them to sustain Plaintiff's narrow claims arising from Sinclair's two July 2018 statements (*id.* at *16-17), the Court did <u>not</u> credit or otherwise rely on the CWs' statements in connection with its analysis of statements regarding the legal compliance of the proposed divestitures, the regulatory approval process, or the knowledge of any Defendants regarding those issues, despite Plaintiff's repeated assertions that the CWs' statements were relevant to those topics (MTD Opp. 42-43).[5]  That is unsurprising, as the CWs say nothing creditable on those topics.  MTD 26-27, 34-36; MTD Reply 24-25; *see also Ash v. PowerSecure Int'l, Inc.*, 2015 WL 5444741, at *13 (E.D.N.C. Sept. 15, 2015); *Phillips v. Triad Guar. Inc.*, 2015 WL 1457980, at *5 (M.D.N.C. Mar. 30, 2015).

<u>Second</u>, Plaintiff's argument about the Company's forward-looking projections for the anticipated timing of regulatory approval of the Merger (Mot. 19-20) also misses the mark.  The CWs' statements cited in the Opinion do not support any inference that any Defendant had "actual knowledge" that those projections were false.  *See* 15 U.S.C. § 78u-5(c)(1)(B) (shielding forward-looking statements from liability under the PSLRA's second safe harbor unless the speaker had "actual knowledge" that the statement was false when made); *Sinclair*, 2020 WL 571724, at *12 n.21.  Indeed, those CWs do not even discuss the Merger, much less when or whether the Merger might receive regulatory approval.  Compl. ¶¶ 100-14; MTD 26-27, 34-36; MTD Reply 24-25.

---

[5] Importantly, the FCC's regulations permit Sinclair and its employees to provide sales and operational services to other FCC license holders operating in the same market.  *See* 47 C.F.R. § 73.3555; MTD 35 & n.16.

Moreover, as the Court correctly concluded in the Opinion, where, as here, forward-looking statements are accompanied by meaningful cautionary language, the PSLRA's first safe harbor precludes liability "irrespective of the speaker's [state of] mind." *Sinclair*, 2020 WL 571724, at *11-12 & n.21 (finding Sinclair's risk warnings sufficiently meaningful to invoke the PSLRA's first safe harbor); *see also Slayton v. Am. Express Co.,* 604 F.3d 758, 766 (2d Cir. 2010). Plaintiff contends that this holding is erroneous in light of the Court's further holding (in the context of its loss causation analysis) that Sinclair "concealed the risk that its *de facto* control of Cunningham could result in FCC rejection of the Merger." Mot. 20. Pursuant to the PSLRA's first safe harbor, however, it does not matter whether the risks that ultimately materialized are identical to those about which the company warned. The sole question is whether the company "identifi[ed] important factors that could cause actual results to differ materially from those in the forward-looking statement[.]" 15 U.S.C. § 78u-5(c)(1)(A)(i); *see also Elec. Workers Pension Tr. Fund of IBEW Local Union No. 58 v. CommScope, Inc.*, 2013 WL 4014978, at *11 (W.D.N.C. Aug. 6, 2013) ("[A]ll [defendants] need do is provide meaningful, cautionary language—nothing less, nothing more."). Here, as the Opinion held, the Company specifically warned investors that "[t]here can be no assurance that pending acquisitions will be approved by the FCC or other regulatory authorities" and incorporated that warning in subsequent SEC filings and public statements. 2020 WL 571724, at *12. Those warnings were more than sufficient, particularly when viewed with the other warnings that the Company provided making clear that regulatory approval of the Merger was not guaranteed and that there were risks of adverse determinations by the FCC with regard to the Merger and Sinclair's FCC licenses. *See* MTD 15-17; 2017 Form 10-K at 27, 29 (ECF No. 49-16).[6]

---

[6] In light of these clear warnings, Plaintiff's argument that a reasonable investor may not have

<u>Finally</u>, Plaintiff's argument that the CWs' statements regarding Sinclair's supposed *de facto* control of Cunningham require the Court to sustain claims based on Sinclair's description of Mr. Anderson as an "unrelated party" (Mot. 18-19) is unavailing.  The Court specifically rejected this argument in the Opinion, holding that Sinclair's statement about Mr. Anderson differed from the statements about Cunningham's independence from Sinclair because the CWs' statements did not contradict the Company's description of Mr. Anderson.  *See Sinclair*, 2020 WL 571724, at *16 n.26.[7]  The Court continued that the Complaint "alleged no facts—other than those already in the public domain—suggesting that Sinclair's description would have misled a reasonable investor."  *Id.*  Plaintiff complains that these findings do not account for allegations in the Complaint regarding Mr. Smith's prior business relationships with Mr. Anderson and the sale price for the Cunningham non-voting stock.  Mot. 19.  However, as noted above, the Plaintiff already raised this argument (MTD Opp. 13), and the Court found the cited allegations insufficient to show that Mr. Anderson was a "related party" (*Sinclair*, 2020 WL 571724, at *10).  Plaintiff offers no reason to change that decision.

For the aforementioned reasons, the motion for reconsideration should be denied.

## II.    <u>RULE 54(B) CERTIFICATION IS NOT WARRANTED</u>

Recognizing that its motion for reconsideration is meritless, Plaintiff has moved in the alternative for certification of an interlocutory appeal.  That motion also should be denied.  Although Rule 54(b) "permits a district court to enter final judgment as to one or more but fewer

---

understood that the FCC (rather than Sinclair) was the "final arbiter" of Sinclair's proposed divestitures' compliance with FCC rules (Mot. 17-18) simply does not hold up.  *See Sinclair*, 2020 WL 571724, at *8.

[7] For this same reason, Plaintiff's claim that Sinclair was obligated to disclose its supposed "*de facto* control" over Cunningham when it elected to disclose the sale of Cunningham's voting stock (Mot. 18-19) lacks merit.

than all claims in a multiclaim action" (*Colour Basis*, 2017 WL 818713, at *4), certification

under Rule 54(b) is "disfavored in the Fourth Circuit" (*Heckman v. Ryder Truck Rental, Inc.*,

2014 WL 3405003, at *1 (D. Md. July 9, 2014) (Blake, J.)).  As Plaintiff's own cases emphasize,

Rule 54(b) certification is "the exception, rather than the norm."  *Henson*, 2015 WL 433475, at

*3 (Mot. 22-24, 26); *Braswell*, 2 F.3d at 1335 (Mot. 24) ("Judgments under Rule 54(b) must be

reserved for the unusual case in which the costs and risks of multiplying the number of

proceedings and overcrowding the appellate docket are outbalanced by pressing needs of the

litigants for an early and separate judgment as to some claims or parties."); *In re Mun. Mortg. &*

*Equity, LLC, Sec. & Deriv. Litig.*, No. 1:08-md-01961-MJD (D. Md. Nov. 14, 2012) (Mot. 24-

27, Ex. A) (same).

      To determine whether Rule 54(b) certification is permitted (and it is never required),

courts apply the two-part test articulated by the Supreme Court in *Curtiss-Wright Corp. v.*

*General Electric Co.*, 446 U.S. 1, 7-8 (1980).  First, the ruling at issue must be a "final

judgment" in that "it is an ultimate disposition of an individual claim entered in the course of a

multiple claims action."  *In re Wireless Tel. Radio Frequency Emissions Prods. Liab. Litig.*

*(Nokia, Inc.)*, 219 F. Supp. 2d 703, 704 (D. Md. 2002) (Blake, J.); *see also Dickinson v. Crabs*

*on Deck, LLC*, 2019 WL 1934485, at *1 (D. Md. Apr. 30, 2019).  Second, the court must find

that there is "no just reason for delay" of the appeal until all claims have been finally

adjudicated.  *Nokia*, 219 F. Supp. 2d at 704; *Crabs on Deck*, 2019 WL 1934485, at *1-2.  The

Fourth Circuit has emphasized that the inquiry is "tilted from the start against fragmentation of

appeals."  *Braswell*, 2 F.3d at 1335.

      "The party seeking a Rule 54(b) certification bears the burden of satisfying [this] test."

*Heckman*, 2014 WL 3405003, at *2.  Here, Plaintiff has not satisfied its burden.

## A.      **The Order Is Not a Final Judgment**

Plaintiff's claim fails right out of the gate because there is no final judgment to appeal. To qualify as a final judgment, an order must be "a 'judgment' in the sense that it is a decision upon a cognizable claim for relief," and it must be "'final' in the sense that it is 'an ultimate disposition of an individual claim entered in the course of a multiple claims action." *Nokia*, 219 F. Supp. 2d at 704. "[T]he touchstone for determining whether an entire claim has been adjudicated for the purposes of Rule 54(b) is whether that claim is separately enforceable without mutually exclu[ding] or substantially overlap[ping] with remedies being sought by the remaining claims pending in the district court." *Lloyd Noland Found., Inc. v. Tenet Health Care Corp.*, 483 F.3d 773, 780 (11th Cir. 2007); *see also Jordan v. Pugh*, 425 F.3d 820, 827 (10th Cir. 2005). But Plaintiff does not and cannot identify any separately enforceable claim dismissed by the Court.

Plaintiff argues that the Order qualifies as a final judgment because it is the "ultimate disposition" for "claims arising from 66 out of the 68 statements" challenged in the Complaint, "result[ing] in the elimination of all but 17 days out of the 502-day Class Period." Mot. 23. But the Order is <u>not</u> a final judgment as to <u>any</u> of the causes of action asserted in the Complaint or <u>any</u> of the named Defendants. Both causes of action and all Defendants remain in the case following the Order. Relatedly, the Fourth Circuit has recognized that "[i]t will be a rare case where Rule 54(b) can appropriately be applied when the contestants on appeal remain contestants below." *Braswell*, 2 F.3d at 1336-37.[8]

---

[8] The fact that all Defendants remain in this action following the Order distinguishes this case from various authorities relied on by Plaintiff. *See, e.g.*, *Henson*, 2015 WL 433475, at *6 (Mot. 22, 23, 24, 26) (entry of final judgment as to only one defendant was appropriate where all claims were dismissed as to that defendant but other claims remained pending against other defendant); *Marks v. Licul*, 2013 WL 6014026, at *3 (D. Md. Nov. 7, 2013) (Mot. 27-28) (all

Moreover, the topic of the statements still at issue overlaps with the topic of some of the statements that the Court properly held were inactionable.  That is, Plaintiff's allegations about Sinclair's relationship with Cunningham are relevant to both the remaining statements and certain of the dismissed ones.  *Compare, e.g.*, Compl. ¶¶ 188-90 *with* Compl. ¶¶ 186, 191; *see also* Compl. ¶¶ 155-60, 172-76.  This overlap is perhaps best illustrated by the Court's decision regarding the challenged statements in Sinclair's July 5, 2018 FCC filing that "Sinclair does not control or hold any attributable interest in Cunningham, nor do any of the Smith brothers own any stock, voting or non-voting, in Cunningham.  Rather, Michael E. Anderson holds 100% of the voting shares of Cunningham."  *Sinclair*, 2020 WL 571724, at *19.  While the Court found that the portion of that statement about Sinclair's lack of "control" of Cunningham was actionable, it dismissed the portions of that statement relating to the ownership of Cunningham stock.  *Id.*  It makes no sense for the Fourth Circuit to review the actionability of part of that sentence now and part of that sentence in a potential, subsequent appeal.[9]

For all of these reasons, certifying the Order under Rule 54(b) would be inappropriate.  *See Dave & Buster's, Inc. v. White Flint Mall, LLP*, 2014 WL 11460866, at *2 (D. Md. Apr. 28, 2014) (court could not certify issues for appeal because, among other things, "[t]here ha[d] been no final disposition of any individual claim and the issues previously decided remain[ed] intertwined with remaining claims and disputes between the parties").

---

claims dismissed against defendant).

[9] Indeed, Plaintiff itself argues elsewhere in its brief that the allegations relied on by the Court in finding the remaining claims were actionable also support a finding that other categories of statements dismissed by the Court are actionable.  Mot. 15-20.  Although that argument fails for the reasons set forth above, it is only because of the overlap between some of the dismissed statements and the remaining statements that Plaintiff can even make the argument.

**B.**   **Entry of Judgment Would Be Premature**

Plaintiff does not (as it must) establish that there is no just reason for delay in the entry of

judgment.  In conducting that inquiry, courts examine a variety of factors, including

> (1) the relationship between the adjudicated and unadjudicated claims; (2)
> the possibility that the need for review might or might not be mooted by
> future developments in the district court; (3) the possibility that the
> reviewing court might be obliged to consider the same issue a second time;
> (4) the presence or absence of a claim or counterclaim which could result in
> a set-off against the judgment sought to be made final; (5) miscellaneous
> factors such as delay, economic and solvency considerations, shortening the
> time of trial, frivolity of competing claims, expense, and the like.

*Colour Basis*, 2017 WL 818713, at *4.  Here, these factors point against certification.[10]

1.   Plaintiff's Argument that the Dismissed
Statements Are Distinct and Separable Fails

Plaintiff's argument boils down to the claim that there is no just reason for delay because

the Order "dismiss[ed] 97% of Plaintiffs' claims" and the remaining claims are "relatively *de

minimis* in comparison to the dismissed claims."  Mot. 24.  This argument is meritless.  The

District of Kansas recently rejected virtually identical arguments in strikingly similar

circumstances.  *See Nat'l Credit Union Admin. Bd. v. Morgan Stanley & Co.*, 2015 WL 4463645,

at *3 (D. Kan. July 21, 2015).  There, the plaintiff moved for entry of a final judgment after the

court dismissed 20 counts of a 21 count complaint, arguing that it should be allowed to appeal

the dismissal because the dismissed claims "represented 97 percent of the total recovery sought."

*Id.*  The court denied the motion, emphasizing that all 21 of plaintiff's counts (including both the

20 dismissed claims and the one remaining claim) relied primarily on the same alleged

misrepresentations and omissions by the same corporation and asserted the same legal theory.

---

[10] Sinclair does not contest that there are no claims or counterclaims currently pending in this
case that would operate as a set-off against the judgment sought to be made final.

*See id.*  In light of this overlap, the Court ruled that the plaintiff's argument did not "present[]" circumstances sufficient to overcome the policy of avoiding piecemeal appeals."  *Id.*  The same is true here, as explained above in Section II.A.  The fact that very few of the initially challenged statements remain in the case is, ultimately, legally irrelevant.  *See Morgan Stanley*, 2015 WL 4463645, at *3.[11]

Moreover, the Fourth Circuit heavily disfavors "fragment[ed] appeals."  *Braswell*, 2 F.3d at 1335.  If Plaintiff were to appeal the Order, then the Fourth Circuit may face both the present appeal of the dismissed statements and another, future appeal relating to the two remaining statements.  Given the aforementioned overlap of topics, this would require the Fourth Circuit to "familiarize itself with the facts of this case multiple times."  *Morgan Stanley*, 2015 WL 4463645, at *3.  Again, the fact that 97% of the statements in the Complaint were dismissed does not overcome this Circuit's policy against redundant appeals.  *See id.*; *see also Colour Basis*, 2017 WL 818713, at *4; *Heckman*, 2014 WL 3405003, at *2.

Plaintiff's contention that the dismissed claims are "severable" and "ripe for appeal" (Mot. 24-25) does not change the outcome.  Plaintiff compares this case to *Municipal Mortgage* (Mot. Ex. A), where the court granted a motion for a final judgment following dismissal of the majority of statements challenged in a securities case (Mot. 24-25), but that comparison is inapt.  Most importantly, in *Municipal Mortgage*, the parties <u>jointly requested</u> issuance of the final judgment.  Mot. Ex. A at 1, 3.  Also, there, unlike here, the dismissal qualified as a final judgment because (a) all of the plaintiffs' causes of action under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 were dismissed, and the only remaining causes of action were

---

[11] In contrast, in *Neuberger Berman Real Estate Income Fund, Inc. v. Lola Brown Trust No. 1B*, 225 F.R.D. 171, 174-75 (D. Md. 2004) (Mot. 22, 23, 27), "[t]he remaining claims present[ed] completely separate legal questions" from the legal questions raised by the dismissed claims.

based on alleged violations of different statutes (*id.* at 2-3), and (b) all of the plaintiffs' claims against certain defendants were dismissed, with the only remaining claims being asserted against a different group of defendants (*id.* at 5).  Accordingly, the court in *Municipal Mortgage* found that the "dismissals [were] ripe for appeal" because "the issues presented neither have any bearing on, nor share legal or factual similarity with, the unadjudicated claims that remain."  *Id.* at 7-8.  Here, the opposite is true.  If anything, *Municipal Mortgage* supports <u>Defendants'</u> argument that Rule 54(b) certification is properly reserved for situations where an entire cause of action or a defendant (or both) has been fully dismissed from the case.[12]

Finally, Plaintiff's "severability" argument ignores the fact that Plaintiff does not control the issues on appeal.  In the event of an interlocutory appeal, Defendants would be entitled to provide the Fourth Circuit with additional bases to affirm the Order, such as that the Complaint does not adequately plead loss causation and that Sinclair's submissions to the FCC were not made "in connection with the purchase or sale of any security."  Those arguments raise issues that overlap with the issues germane to the remaining statements and that may be the subject of a subsequent appeal after a final judgment is entered.  *See Morgan Stanley*, 2015 WL 4463645, at *3 (rejecting argument that dismissed claims were severable because, in the event of an interlocutory appeal, "defendants would be entitled to raise all previously-litigated issues . . . as well as other bases for dismissal raised in their motion to dismiss," which "would require the appellate court to examine facts underlying [the remaining] claims").

---

[12] *See also Huggins v. N.C. Dep't of Admin.*, 2011 WL 5439091, at *2 (E.D.N.C. Nov. 9, 2011) (denying Rule 54(b) where portion of Title VII claim was dismissed but portion remained because "[n]o party ha[d] been fully resolved in this case and no claims have been dismissed that could be characterized as separate claims appropriate for final judgment").

2.      Miscellaneous Factors Do Not Support Certification

Plaintiff raises two additional factors in an attempt to satisfy its burden.  Mot. 28-29.

First, Plaintiff argues that it likely will not pursue this case absent an appeal because, in light of the supposedly "*de minimis* scope and magnitude of the remaining claims," there will purportedly only be "limited potential recoverable damages" even if Plaintiff is successful in pursuing those claims.  Mot. 29.  The fact that Plaintiff's recovery (if any) may be smaller than it originally hoped for is not the "danger or hardship" or the "economic and solvency considerations" contemplated by Rule 54(b).  Rather, the typical example of hardship under Rule 54(b) is where a party's "financial position were such that a delay in entry of judgment . . . would impair [another party's] ability to collect."  *Curtiss-Wright*, 446 U.S. at 12.[13]

Ultimately, Plaintiff's reluctance to pursue this case absent reversal on appeal does not weigh in favor of certification.  In the cases Plaintiff cites in support of this argument (Mot. 26-28), the court found there was no reason to delay the appeal because the parties moved jointly for the issuance of a final order (*TransPacific Tire & Wheel, Inc. v. Orteck Int'l, Inc.*, 2010 WL 2774445, at *1-2 (D. Md. July 13, 2010)) or because there was an agreement to stay the litigation of the remaining claims pending the outcome of a separate litigation (*Marks*, 2013 WL 6014026, at *4).  That is not the case here.  If Plaintiff wishes to relinquish the remainder of this action, it is free to voluntarily dismiss the parts of this case that were not already dismissed by the Court. A final judgment could then be entered, and Plaintiff could then pursue an appeal as of right without the need for the extraordinary relief sought herein.

---

[13] Plaintiff's own authorities are in accord.  *See Bright v. Tishman Constr. Corp.*, 1998 WL 63403, at *7 (S.D.N.Y. Feb. 17, 1998) (Mot. 29) (certification appropriate where remaining claim was factually independent from dismissed claims and further delay would cause plaintiffs "extreme economic hardship").

<u>Second</u>, Plaintiff asserts that issuance of a final judgment is warranted because it likely lacks standing to pursue the remaining claims because Atlanta P&F did not buy shares of Sinclair stock during the shortened class period remaining in light of the Order.  Mot. 28-29; *see also* Mot. 25-27.  But that standing issue is easily remedied in a class action such as this: "Lead plaintiffs can cure standing deficiencies by adding an additional plaintiff who purchased securities later in the putative class period."  *Mortimer v. Diplomat Pharmacy Inc.*, 2019 WL 4934602, at *4 (N.D. Ill. Oct. 7, 2019); *see also City of Cape Coral Mun. Firefighters' Ret. Plan v. Emergent Biosolutions, Inc., HQ*, 322 F. Supp. 3d 676, 682 (D. Md. 2018).[14]

**CONCLUSION**

For these reasons, the Motion should be denied in its entirety.

DATED:  March 3, 2020                    Respectfully submitted,

                                         By:  /s/ *Sima G. Fried*
                                               Scott H. Marder (Bar No. 28789)
                                               Sima G. Fried (Bar No. 03564)

                                         THOMAS & LIBOWITZ, P.A.
                                         25 S. Charles Street, Suite 2015
                                         Baltimore, MD 21201
                                         Telephone:  (410) 752-2468
                                         Facsimile: (410) 752-2046
                                         shmarder@tandllaw.com
                                         sfried@tandllaw.com

---

[14] Plaintiff cites a decision from the Middle District of Pennsylvania that handled the standing issue differently but does not cite any cases from within this District (or even this Circuit) that differ from Judge Titus's approach in the *Emergent* case.  Mot. 25, 28 (citing *Hering v. Walgreen Boots Alliance, Inc.*, 341 F. Supp. 3d 412 (M.D. Pa. 2018)).  The *Mortimer* decision cited above cites a half-dozen decisions from around the country that have held that standing issues of the type Plaintiff complains of here can be solved by adding an additional plaintiff who purchased securities later in the class period.  *See* 2019 WL 4934602, at *4.

FRIED, FRANK, HARRIS,
  SHRIVER & JACOBSON LLP
Scott B. Luftglass (*pro hac vice*)
Samuel P. Groner (*pro hac vice*)
Michael P. Sternheim (*pro hac vice*)
One New York Plaza
New York, NY 10004
Telephone:  (212) 859-8000
Facsimile: (212) 859-4000
scott.luftglass@friedfrank.com
samuel.groner@friedfrank.com
michael.sternheim@friedfrank.com

*Counsel for Defendants Sinclair Broadcast Group,
Inc., Christopher S. Ripley, Lucy A. Rutishauser,
Steven M. Marks, and David D. Smith*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 3rd day of March, 2020, I filed the foregoing document

electronically via the Court's CM/ECF system, which will effect service on all counsel of record.


     /s/
Sima G. Fried